Amado B. GARCIA, Plaintiff
and Appellant,

v.

Fred C. SCHWENDIMAN, Chief of Drivers License Division, State of Utah, Defendant and Respondent.

No. 17559.

Supreme Court of Utah.

April 1, 1982.

Richard W. Brann, Ogden, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

**652**

DURHAM, Justice:

After a trial de novo, the district court affirmed the defendant's administrative revocation of plaintiff Garcia's driving privileges. Plaintiff appeals from the district court decision and contends that there was insufficient evidence to support the district court's finding that he was in "actual physical control of a motor vehicle" as contemplated by the Utah implied consent statute.

At 6:00 p. m. on November 1, 1980, Officer Gerald Ecker responded to a disturbance complaint at an apartment complex in Sunset, Utah. When he arrived at the complex, Officer Ecker was met by a Mr. Varble, who had positioned his own vehicle behind the automobile of the plaintiff to prevent the plaintiff from backing out of his parking stall. A fence was located approximately three feet in front of the plaintiff's car. Officer Ecker testified that as he approached the Garcia vehicle, he observed the plaintiff alone in the vehicle behind the steering wheel in the "process of starting his motor vehicle" by attempting to turn on the ignition; the officer testified that he saw the keys in the ignition. While there was some dispute about whether or not the key was actually in the ignition, the district court found it "believable that the plaintiff had the keys in the ignition," and it is not disputed that he had the ignition key in his exclusive possession. Officer Ecker observed that plaintiff was apparently under the influence of alcohol. A second police officer, Officer Gale, arrived at the scene, obtained the keys from the plaintiff and, after interviewing Officer Ecker and Mr. Varble, placed the plaintiff under arrest for being in actual physical control of a vehicle while under the influence of alcohol.

The plaintiff refused to permit chemical tests of his blood or breath, and consequently received a one-year revocation of his driver's license after an administrative hearing by the Department of Public Safety pursuant to the authority of the Utah implied consent statute, § 41–6–44.10, Utah Code Ann. (1953). This statute provides for revocation of a person's driver's license when he refuses to submit to chemical tests

of his blood, breath or urine "for the purpose of determining whether he was driving or in actual physical control of a motor vehicle while under the influence of alcohol." The statute's enforcement provision, § 41–6–44.10(b) U.C.A., requires that the arresting officer have reasonable grounds to believe that the arrested person has been driving or is in actual physical control of a motor vehicle while under the influence of alcohol.

█ The defendant argues that a showing that the arresting officer had grounds to believe the person was in physical control of a vehicle is by itself sufficient to support an administrative license revocation. We disagree. This Court has previously recognized two separate evidentiary burdens to be borne by the Department of Public Safety in a revocation proceeding. The department must show that an operator was "in actual physical control of a motor vehicle" in addition to showing that the arresting officer had grounds to believe that the operator was then under the influence of alcohol. *Ballard v. State*, Utah, 595 P.2d 1302 (1979).

█ The same burdens must be met in the district court. The district court's jurisdiction, conferred by § 41–6–44.10(b) U.C.A., is limited to a trial de novo "to determine whether the petitioner's license is subject to revocation under the provisions of this act." In *Ballard, supra*, we characterized the trial de novo as "civil and administrative, the purpose of which is for the protection of the public." 595 P.2d at 1304. In contrast to prosecutions under criminal statutes, a license revocation proceeding requires proof only by a preponderance of the evidence and not beyond a reasonable doubt. Since all other matters were resolved by stipulation, the single issue before the district court, and now before us, is whether the defendant proved by a preponderance of the evidence that the plaintiff was "in actual physical control of a motor vehicle" as contemplated by the implied consent statute.

■ The district court found "from the totality of the facts and the circumstances that the [plaintiff] had actual physical control of the vehicle as required by the Implied Consent Statute." The standard for appellate review of factual findings affords great deference to the trial court's view of the evidence unless the trial court has misapplied the law or its findings are clearly against the weight of the evidence. *Pagano v. Walker*, Utah, 539 P.2d 452 (1975); *Reed v. Alvey*, Utah, 610 P.2d 1374 (1980).

The meaning of "actual physical control" is suggested by the structure of § 41–6–44.‑10(a), which reads:

> Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test or tests ... for the purpose of determining whether he was driving *or* in actual physical control of a motor vehicle while under the influence of alcohol .... [Emphasis added.]

The use of the disjunctive "or" strongly suggests an intent to proscribe conduct beyond and different from driving or operating a moving vehicle.[1] Thus, the standard in Utah for determining whether a person was "in actual physical control" of a vehicle is different from the standard used in states which have only "driving" or "operating" language in their statutes. *State v. Daly*, 64 N.J. 122, 313 A.2d 194 (1973), for example, relied upon by plaintiff, was decided under a criminal statute with "operating" language and is not persuasive in this case. Of greater value is the case of *State v. Ruona*, Mont., 321 P.2d 615 (1958), in which the Montana Supreme Court, following an earlier Ohio case, construed a criminal statute with the phrase "drive or be in actual physical control," and adopted the view that:

> ... the statute defined two distinct offenses, in "operating a vehicle," and "being in actual physical control of a vehicle" while intoxicated.

321 P.2d at 618. This conclusion was likewise reached in *Walker v. State*, Okl.Cr., 424 P.2d 1001 (1967), where the Oklahoma Court of Criminal Appeals held that the use of the disjunctive in Oklahoma's statute resulted in two offenses, one being "to drive or operate" and the other being "to be in actual physical control" of a motor vehicle. The language of Utah's implied consent statute requires the same construction.

A definition of "actual physical control" is contained in *State v. Bugger*, 25 Utah 2d 404, 483 P.2d 442 (1971). The statute in question there was § 41–6–44, which made it unlawful for any person under the influence of intoxicating liquor "to drive or be in actual physical control of any vehicle within this state." In *Bugger*, the defendant was found asleep in his car, which was completely off the traveled portion of the highway; the motor was not running. This Court held that there was no actual physical control of the vehicle. "Actual physical control" was defined in its ordinary sense to mean "present bodily restraint, directing influence, domination or regulation." 483 P.2d at 443. The Court found, on these facts, that the defendant was "not controlling the vehicle, nor was he exercising any dominion over it." *Id.*

Acts short of starting the motor have been held to constitute actual physical control in other jurisdictions. In *Hughes v. State*, Okl.Cr., 535 P.2d 1023 (1975), the court found a defendant to have been in actual physical control of a vehicle when the vehicle was found improperly parked in a residential area. The defendant was in the front seat, the ignition key was in the ignition, and the motor was turned off. The court said:

> It is our opinion that the legislature, in making it a crime to be in "actual physical control of a motor vehicle while under the influence of intoxicating liquor," in-

1. As of 1967, § 41–6–44.10(a) U.C.A. simply stated that "any person operating a motor vehicle" was deemed to have given his consent to chemical tests. In 1969, a new subparagraph (b) was enacted which referred to tests "for the purpose of determining whether he was driving or was in actual physical control of a motor vehicle under the influence ...," which is the same language found in the current statute. Thus, the Legislature appears to have deliberately expanded the scope of the statute's coverage.

tended to enable the drunken driver to be apprehended before he strikes ....

\* \* \* \* \* \*

We believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than when the intoxicated person is actually driving a vehicle, but it does exist. The defendant when arrested may have been exercising no conscious volition with regard to the vehicle, still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away.

535 P.2d at 1024. The same public policy concern for prevention compelled a similar result in *City of Cincinnati v. Kelley,* 47 Ohio St.2d 94, 1 Ohio Ops. 56, 351 N.E.2d 85 (1976). In that case an intoxicated motorist seated in the driver's seat of a legally parked car with his hands on the steering wheel and the keys in the ignition was found to be in actual physical control of his vehicle, even though the engine was off. The court held that the relevant city ordinance provided for two separate offenses, in that it prohibited "operating *or* being in 'actual physical control' of a vehicle while under the influence of alcohol." (Emphasis in original.) From that initial premise, the court concluded that it should interpret the "control" offense in light of the apparent legislative purpose in defining an offense separate from "operating."

> The clear purpose of the control aspect of the instant ordinance is to deter persons from being found under circumstances in which they can directly commence operating a vehicle while they are under the influence of alcohol ....

\* \* \* \* \* \*

[T]he term "actual physical control," as employed in the subject ordinance, requires that a person be in the driver's seat of a vehicle, behind the steering wheel, in possession of the ignition key, and in such condition that he is physically capable of starting the engine and causing the vehicle to move.

351 N.E.2d at 87. That a preventive purpose should be read into the "actual physical control" language is the opinion of a substantial majority of the jurisdictions interpreting similar statutory language.[2]

In a recent case, *State v. Juncewski,* Minn., 308 N.W.2d 316 (1981), the Supreme Court of Minnesota held that a defendant who had been found inside a pickup truck, seated behind and leaning against the steering wheel was in "actual physical control" of the vehicle. While there was uncertainty as to whether the motor was running, the court held that "[w]hether a motor must be running before a person may be in actual physical control is essentially a policy issue." 308 N.W.2d at 320.

 As a matter of public policy and statutory construction, we believe that the "actual physical control" language of Utah's implied consent statute should be read as intending to prevent intoxicated drivers from entering their vehicles except as passengers or passive occupants as in *Bugger, supra.* Therefore, under the facts before us, where a motorist occupied the driver's position behind the steering wheel, with possession of the ignition key and with the apparent ability to start and move the vehicle,[3] we hold that there has been an adequate showing of "actual physical control" under our implied consent statute.

**2.** See, e.g., *State v. Ghylin,* N.D., 250 N.W.2d 252 (1977) (purpose of statute to deter intoxicated persons from getting into their vehicle except as passengers); *State v. Beckey,* 291 Minn. 483, 192 N.W.2d 441 (1971) (purpose of implied consent law to aid enforcement of criminal drunk driving statute); *State v. Halvorson,* Minn., 181 N.W.2d 473 (1970) (purpose to promote traffic safety); *State v. Schuler,* N.D., 243 N.W.2d 367 (1976) (purpose of "actual physical control" statute is preventive).

**3.** The testimony of Officer Ecker was that plaintiff had the key in the ignition and "was in the process of starting his motor vehicle." He later expressed the view that the plaintiff was having trouble doing so because of the degree of his intoxication, but nothing in the record warrants a finding that the plaintiff was physically unable to start the car, as would be the case with an unconscious or sleeping motorist.

That the plaintiff might have been prevented from moving his vehicle by the fence in front and the parked car of Mr. Varble in the rear does not alter our conclusion. In that respect, our decision comports with cases from other jurisdictions in which there was a physical obstacle preventing actual movement of the vehicle, but the courts nonetheless found actual physical control.[4] The record in this case demonstrates that plaintiff's automobile could have traveled at least a few feet if it had been put into operation.

Similarly, we find it unnecessary for the department to show actual intent under the control provisions of the implied consent statute. Just as an intent to drive is inferred from one's actual driving, so also may an intent to control a vehicle be inferred from the performance of those acts which we have held to constitute actual physical control.

The decision of the district court is affirmed.

HALL, C. J., and STEWART, OAKS and HOWE, JJ., concur.

**4.** See, e.g., *State v. Dunbany*, 184 Neb. 337, 167 N.W.2d 556 (1969); *State v. Schuler*, N.D., 243 N.W.2d 367 (1976).