**Jose Antonio LOPEZ, Plaintiff and Appellant,**

v.

**Fred C. SCHWENDIMAN, Chief, Driver License Services, Utah Department of Public Safety, Defendant and Respondent.**

No. 20112.

Supreme Court of Utah.

June 12, 1986.

Phil L. Hansen, (Lopez), Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

## PER CURIAM:

The Utah State Driver License Division revoked the driving privileges of petitioner Lopez for a period of one year pursuant to U.C.A., 1953, § 41–6–44.10 (1981 ed.). After a trial de novo, the trial court affirmed the administrative decision. Lopez appeals and contends: (1) it was error to find that Lopez was in actual physical control of his vehicle when he was asleep at the wheel and the vehicle was inoperable; (2) his refusal to take a breath test was reasonable; and (3) it was error to allow testimony on Lopez's breath test refusal when Lopez did not know that he was under arrest. We affirm.

At approximately 3:00 a.m. on March 18, 1984, Officers Anderson and Schofield were separately dispatched to investigate a prowler report. En route, Schofield was flagged down by an individual who pointed to Lopez's truck parked by a public telephone booth adjacent to Sunnyside City Hall. The truck's motor was not running. There were vehicle tracks from the pickup in the freshly fallen snow. When Schofield approached the truck, Lopez was sitting in the driver's seat with his head resting on the steering wheel. Schofield tapped on the window, assisted Lopez in opening the door to talk to him, and had to catch him when he fell more than stepped out of his truck. Schofield smelled alcohol on Lopez's breath. Lopez was drooling, had very poor balance, and needed support to stand. When asked to produce a driver license, Lopez initially handed the officer a child's picture. Schofield removed the keys from the ignition and had to turn them to get them out.

After Officer Anderson arrived, both officers asked Lopez to perform several field sobriety tests, which he failed. Lopez at one point stated, "Was I driving, I was just waiting for a phone call." Lopez was placed under arrest, handcuffed, and placed in the patrol car. Both officers testified that Lopez asked several times what he was arrested for. Officer Anderson then requested Lopez to submit to a breath test to determine the alcohol content in his blood. Lopez responded, "I took your tests. I passed your tests." Lopez was transported to the sheriff's station, where he was again asked to submit to the breath test, was advised that he would be permit-

ted to have an additional test administered by a physician of his own choice, and was warned that his refusal to submit to the test could·result in revocation of his license for one year. Lopez did not respond.

At trial, Lopez stated for the first time that his wife had been driving the truck when the battery died. He had been waiting in the truck for her to bring the car to tow the truck home. He admitted that he had not told the officers about any dead battery or dead car. He admitted that he understood that he had been arrested for driving while under the influence. Lopez also testified that he had refused the officer's request to take the breath test because he "didn't trust them" and that he had conducted the field sobriety tests well enough to prove that he had not been drinking. He also confirmed that he had been told that he would lose his license if he refused.

From the evidence so adduced, the trial court found by a preponderance that there was probable cause to arrest Lopez, that he had been requested to take the breath test, and that he had been warned of the consequences if there was a refusal. The court found the arrest proper because Lopez was alone in the car, had the keys to the vehicle, "there were tire tracks leading up to the vehicle, the vehicle got there apparently on its own power," and Lopez had failed the field sobriety tests.

In a revocation proceeding, the Driver License Division has the burden to show that the operator of a vehicle was "in actual physical control of a motor vehicle" and that the arresting officer had grounds to believe that the operator was then under the influence of alcohol. *Garcia v. Schwendiman*, 645 P.2d 651, 652 (Utah 1982); *Ballard v. State*, 595 P.2d 1302 (Utah 1979). In a trial de novo, the district court must determine by a preponderance of the evidence "whether the petitioner's license is subject to revocation under the provisions of this chapter." § 41-6-44.-10(2), *supra; Garcia*, 645 P.2d at 652. Our review of that determination is deferential to the trial court's view of the evidence

unless the trial court has misapplied principles of law or its findings are clearly against the weight of the evidence. *Id.* at 653.

Lopez first argues that the Driver License Division failed to meet the statutory requirements that he had "actual physical control" of the vehicle when he was arrested. Section 41-6-44.10(1) reads in pertinent part:

> Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test or tests of his breath, blood, or urine for the purpose of determining whether he was driving *or in actual physical control* of a motor vehicle while having a blood alcohol content statutorily prohibited, or while under the influence of alcohol, any drug, or combination of alcohol and any drug ... so long as the test is or tests are administered at the direction of a peace officer having grounds to believe that person to have been driving or in actual physical control of a motor vehicle while having a blood alcohol content statutorily prohibited, or while under the influence of alcohol, any drug, or combination of alcohol and any drug....

Lopez compares his situation to the facts of *State v. Bugger*, 25 Utah 2d 404, 483 P.2d 442 (1971), where the driver of the vehicle had parked his car completely off the road, had turned off the motor, and was sleeping. Nothing in that case indicates that the driver was in the driver's seat at the time he was found and arrested. "Positioning in the driver's seat is an element common to all of the cases that have found actual physical control of a motionless vehicle." *State v. Smelter*, 36 Wash. App. 439, 674 P.2d 690 (1984). *See also Adams v. State*, 697 P.2d 622 (Wyo.1985); *Huges v. State*, 535 P.2d 1023 (Okla.Crim. 1975); *but compare Bearden v. State*, 430 P.2d 844 (Okla.Crim.1967), where the driver lay unconscious on the ground beside his pickup truck. The courts upholding convictions in these and similar fact situations start out from the premise that as long as a person is physically able to assert domin-

ion by starting the car and driving away, he has substantially as much control over the vehicle as he would if he were actually driving it. *Adams v. State,* 697 P.2d at 625.

Nonetheless, Lopez claims that his car was inoperable at the time of his arrest and that the statutory burden was therefore not borne by the Driver License Division as he was unable to start the car and drive it away. We note initially that Lopez first told this version of the events leading to his arrest when he took the stand in his trial de novo. No substantiating evidence was offered to buttress his assertion. Under the circumstances, the trial court may well have disbelieved him and given little weight to his testimony. Assuming *arguendo* that Lopez's truck was indeed disabled, jurisdictions with similar statutes as ours have nonetheless found "actual physical control" of the driver over the disabled car. The rationale was forcefully voiced in *State v. Smelter,* 674 P.2d at 693:

> The focus should not be narrowly upon the mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move. Where, as here, circumstantial evidence permits a legitimate inference that the car was where it was and was performing as it was because of the defendant's choice, it follows that the defendant was in actual physical control. To hold otherwise could conceivably allow an intoxicated driver whose vehicle was rendered inoperable in a collision to escape prosecution.

*Citing Commonwealth v. Taylor,* 237 Pa. Super.212, 352 A.2d 137 (1975). Utah's statute provides for the arrest of one "in actual physical control" of the vehicle while under the influence of alcohol and/or drugs. That requirement was intended by our legislature to protect public safety and apprehend the drunken driver before he or she strikes, § 41–2–19.5; *Garcia,* 645 P.2d

at 654; *accord Ballard v. State, supra,* and may not be construed to exclude those whose vehicles are presently immobile because of mechanical trouble. *State v. Smelter, supra.*

The trial court here found that there were tire tracks leading up to the vehicle, that the vehicle had to have reached its point of rest "apparently on its own power," and that Lopez had failed the field sobriety tests. Those findings are supported by competent evidence and will not be disturbed by this Court.

At trial, Lopez based his refusal to submit to a breath test upon the rumors that there had been incidents of tampering with the breathalyzer in the past. His retort to the officers at the scene was that he had taken the tests and passed them. A refusal simply means that an arrestee who is asked to take a breath test "declines to do so of his own volition." *Cavaness v. Cox,* 598 P.2d 349 (Utah 1979). Whether or not that refusal is conditional makes no difference. *Id.* Likewise, it makes no difference whether or not a refusal is reasonable. The result is still a license revocation of one year. By the same token, a refusal to answer yes or no to a request to take a breath test is still a refusal. *Beck v. Cox,* 597 P.2d 1335 (Utah 1979). Lopez admitted that he had been requested to submit to the test and that he had refused. No more was required to invoke the sanction of the statute. § 41–6–44.10(2), *supra.*

We do not reach the merits of Lopez's claim that testimony on his refusal to take the breath test was inadmissible because he was not aware that he was under arrest. Lopez's counsel did not object, but actively solicited that testimony from Lopez on cross-examination. This Court will not review alleged error when no objection at all is made at the trial level. *State v. Lesley,* 672 P.2d 79 (Utah 1983).

The judgment is affirmed.