RICHFIELD CITY, Plaintiff and Respondent,

v.

James M. WALKER, Defendant and Appellant.

No. 890156–CA.

Court of Appeals of Utah.

March 26, 1990.

Shelden R. Carter, Harris, Carter & Harrison, Provo, for defendant and appellant.

Richard K. Chamberlain, Richfield, for plaintiff and respondent.

Before BENCH, GARFF and LARSON,[1] JJ.

## OPINION

GARFF, Judge:

Defendant James M. Walker appeals from his conviction of being in actual physical control of a vehicle while having a blood alcohol level of .21%, in violation of Richfield City Ordinance 1983–2. We affirm.

At a bench trial, the following facts were stipulated to by the parties. In the early morning hours of June 30, 1987, defendant drove to the Richfield Quality Inn, seeking a room. After being informed that there were no vacancies, he returned to his truck

---

1. John Farr Larson, Senior Juvenile Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

in the parking lot and went to sleep. Subsequently, he was discovered by a Sevier County sheriff's deputy, who found defendant's truck with the engine off and the headlights on. The doors were unlocked and the keys were in the ignition. Defendant was asleep on the seat, with his head toward the passenger door and a blanket over him. Within thirty minutes of his arrest, defendant submitted to an intoxilyzer test that registered his blood alcohol level at .21%.

Defendant does not dispute his intoxicated state. He contends that: (1) the Richfield City ordinance under which he was convicted is invalid, and (2) he did not have actual physical control over the vehicle.[2]

■ Because this matter was presented on stipulated facts, which are "the functional equivalent" of findings of fact, we do not defer to the trial court's findings. *Dover Elevator Co. v. Hill Mangum Invests.*, 766 P.2d 424, 426 (Utah Ct.App.1988). Where the facts are not in material dispute, the interpretation placed thereon by the trial court becomes a question of law, which is not conclusive on appeal. *Diversified Equities, Inc. v. American Sav. & Loan Ass'n*, 739 P.2d 1133, 1136 (Utah Ct.App.1987).

### VALIDITY OF THE RICHFIELD ORDINANCE

Utah's present DUI statutes, contained in Utah Code Ann. title 41, were enacted in 1983. Utah Code Ann. § 41–6–43 (1983) requires consistency between state law and local ordinances:

An ordinance adopted by a local authority that governs a person's driving or being in actual physical control of a motor vehicle while having alcohol in the blood ... or that governs, in relation to

any of those matters, the use of a chemical test or chemical tests, or evidentiary presumptions, or penalties or that governs any combination of those matters, shall be consistent with the provisions in this code which govern those matters.

Accordingly, Richfield City adopted all of the 1983 amendments to Utah Code Ann. § 41–6–44 (1983) in its city ordinance 1983–2. After 1983, the legislature enacted additional amendments to title 41 which were not explicitly adopted by Richfield City. Defendant contends that the Richfield City ordinance is invalid because it is now inconsistent with section 41–6–44.

There can be no question that, at the time it was enacted, the Richfield City ordinance was consistent with the statute. Therefore, the only question is whether Richfield City's failure to adopt subsequent amendments made its ordinance inconsistent and, therefore, unenforceable.

■ We have examined both the statute and the ordinance and, although we agree that differences exist, we find that those differences do not amount to an invalidating inconsistency.

First, defendant alleges that the 1987 amendment to section 41–6–44 significantly and substantially alters the description of the offense, thereby leaving the Richfield City ordinance inconsistent and invalid. The version adopted by Richfield City, Utah Code Ann. § 41–6–44(1) (1983), states, in pertinent part, that:

[i]t is unlawful and punishable as provided in this section for any person with a blood alcohol content of .08% or greater by weight ... to drive or be in actual physical control of a vehicle within this state.

The 1987 amendment to section 41–6–44(1) added language stating that it is unlawful

---

**2.** In *Garcia v. Schwendiman*, 645 P.2d 651, 652 (Utah 1982), the Utah Supreme Court stated that the language of Utah Code Ann. § 41–6–44(10) (1953 as amended), "driving or in actual physical control of a motor vehicle," describes two distinct offenses: one, operating a motor vehicle, and the other, being in actual physical control of a vehicle. Although section 41–6–44(10) has since been repealed, Utah Code Ann. § 41–6–44 (1988) has comparable language, "op-

erate or be in actual physical control of a vehicle." Following the reasoning in *Garcia*, we interpret section 41–6–44 to also describe two distinct offenses, operating a motor vehicle and being in actual physical control. In the present case, the information only charged defendant with having "actual physical control of a vehicle with blood alcohol content of .08% or greater." It did not charge him with operating the vehicle.

for a person to drive or be in actual physical control of a vehicle with a blood alcohol content of .08% or greater "as shown by a chemical test given within two hours after the alleged operation or physical control." Utah Code Ann. § 41–6–44(1)(a) (1987). The nature of the offense and the prohibited conduct are not changed by this amendment, which only further describes the conditions that will result in a presumption of intoxication.

In any event, these conditions were already included in another provision of the city ordinance. Section 2 of the ordinance adopted, by reference, the provisions of Utah Code Ann. § 41–6–44.5(2) (1983), which states:

> If the chemical test was taken within two hours of the alleged driving or actual physical control, the blood alcohol level of the person at the time of the alleged driving or actual physical control shall be presumed to be not less than the level of the alcohol determined to be in the blood by the chemical test.

Thus, the same presumption created by the 1987 amendment is created by combining this provision with subsection 1 of the ordinance. "Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail." *Salt Lake City v. Kusse*, 97 Utah 113, 93 P.2d 671, 673 (1938). Consequently, the ordinance is consistent with the statute.

■ Second, defendant alleges that the 1987 amendment conflicts with the ordinance because Utah Code Ann. § 41–6–44(3) (1987) indicates that persons convicted of a first violation are guilty of a class B misdemeanor, while the ordinance states that punishment shall be by "imprisonment for not less than 60 days nor more than six months, or by a fine of $299," or both. Richfield City Ordinance 1983–2(1.3).

"A municipal ordinance is not in conflict with a statute authorizing its adoption because of a difference in penalties." *Salt Lake City v. Allred*, 20 Utah 2d 298, 437

P.2d 434, 436 (1968) (quoting 37 Am.Jur., *Municipal Corporations*, § 165). However, the penalty portion of an ordinance is void if it conflicts with the general state law governing the subject.

Here, both the ordinance and the statute describe class B misdemeanors. The ordinance merely contains a longhand description of the penalty for a class B misdemeanor as set forth in Utah Code Ann. § 76–3–204(2) (1978), imprisonment "for a term not exceeding six months." Therefore, it is not inconsistent with the statute. The ordinance also imposes a fine of up to $299.[3] Utah Code Ann. § 76–3–201(1) (1978) allows a court, within limits prescribed by statute, to sentence a guilty person to pay a fine, to be imprisoned, or both. Section 76–3–201(2) (1978) also allows a court to include a civil penalty in a sentence. Utah Code Ann. § 76–3–30 (1978) allows a court to impose a fine of up to $299 for a class B misdemeanor.

The punishment actually imposed upon defendant was a forty-eight hour jail sentence and a $299 fine, plus a $250 assessment for drunk driving school and victim restitution. Thus, defendant's actual punishment was consistent with the terms of both the ordinance and the statute.

■ Third, defendant contends that the statute and the ordinance are inconsistent because the 1987 amendment to section 41–6–44 allows a person's intoxication level to be determined by measuring the alcohol content in either the breath or the blood, while Richfield City Ordinance 1983–2(1.1) only allows for measurement of blood alcohol content. Because the ordinance follows one of the two statutorily prescribed methods, it is consistent with the statute.

■ We conclude that the municipal ordinance need not be identical to the controlling state statute to be consistent with it. In *Kusse*, the supreme court addressed the issue of discrepancies between state and municipal legislation, stating, " 'In determining whether an ordinance is in conflict with general laws, the test is whether the ordinance permits or licenses that which

---

**3.** Subsequent amendments to the Utah Code have increased the potential fine to $1,000.

the statute forbids and prohibits, and vice versa.' Judged by such a test, an ordinance is in conflict if it forbids that which the statute permits." *Kusse*, 93 P.2d at 673 (quoting *State v. Carran*, 133 Ohio St. 50, 11 N.E.2d 245, 246 (1937)). Following this reasoning in *Layton City v. Glines*, 616 P.2d 588 (Utah 1980), the supreme court also indicated that, "[t]he fact the municipal ordinance does not encompass all the proscriptions of the state regulation does not render it in conflict with that statute." *Id.* at 589. Because we find no conflicts or inconsistencies in the differences pointed out by defendant, we hold that the ordinance is valid.

## ACTUAL PHYSICAL CONTROL

Defendant claims that even if the ordinance is valid, he should not have been convicted because he was not in actual physical control of his truck when he was found asleep inside it.

Initially, we examine the public policy behind the laws prohibiting being in actual physical control of a vehicle while intoxicated:

> In general, laws prohibiting driving while intoxicated are deemed remedial statutes, to be "liberally interpreted in favor of the public interest and against the private interests of the drivers involved." Specifically, actual physical control statutes have been characterized as "preventive measure[s]," which "deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers," and which "enable the drunken driver to be apprehended before he strikes."

*State v. Smelter*, 36 Wash.App. 439, 674 P.2d 690, 693 (1984) (citations omitted) (quoting *State v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981); *see also State v. Webb*, 78 Ariz. 8, 274 P.2d 338, 339 (1954); *State v. Ghylin*, 250 N.W.2d 252, 255 (N.D.1977); *State v. Schuler*, 243 N.W.2d 367, 370 (N.D.1976)).

In *Garcia v. Schwendiman*, 645 P.2d 651 (Utah 1982), our supreme court stated that

> [a]s a matter of public policy and statu-

tory construction, we believe that the "actual physical control" language of Utah's implied consent statute should be read as intending to prevent intoxicated drivers from entering their vehicles except as passengers or passive occupants. . . .

*Id.* at 654.

We, therefore, apply the law to the facts of this case in a manner consistent with the public policy that intoxicated motorists should be kept out of their vehicles except as passengers or passive occupants, and should be apprehended before they strike.

■ A review of the relevant cases convinces us that we must look to the totality of the circumstances to determine whether defendant was in actual physical control of his vehicle. In *State v. Bugger*, 25 Utah 2d 404, 483 P.2d 442 (1971), the Utah Supreme Court held that an intoxicated motorist, asleep in his car, was not in actual physical control of his vehicle. The court recited *Bugger*'s meager facts as follows: "The defendant was asleep in his automobile which was parked upon the shoulder of a road. . . . The automobile was completely off the traveled portion of the highway and the motor was not running." *Id.*

In *Lopez v. Schwendiman*, 720 P.2d 778 (Utah 1986) (per curiam), the supreme court held that an intoxicated motorist, asleep at the wheel in his inoperable truck, was in actual physical control of his vehicle. It did not overrule *Bugger* but distinguished it, stating, "Nothing in [*Bugger*] indicates that the driver was in the driver's seat at the time he was found and arrested." *Id.* at 780. It concluded that "[p]ositioning in the driver's seat is an element common to all of the cases that have found actual physical control of a motionless vehicle." *Id.* (quoting *Smelter*, 674 P.2d at 692); *see also Fieselman v. State*, 537 So.2d 603 (Fla.Dist.Ct.App.1988); *State v. Peterson*, 769 P.2d 1221 (Mont.1989). Nothing in *Bugger* indicates that the driver was *not* in the driver's seat at the time he was arrested. However, *Lopez* implies that Bugger was not behind the wheel, despite the fact that nothing in *Bugger* permits that as-

sumption. Thus, positioning in the driver's seat is a significant but not necessarily the determining factor in ascertaining actual physical control.

The *Lopez* court further found that where the lone occupant in a vehicle was positioned in the driver's seat, had possession of the ignition key, and had the apparent ability to start and move the vehicle, he was in actual physical control. Although *Bugger* was silent as to other indicia of actual physical control, *Lopez* suggests that possession of the ignition key and the ability to start and move the vehicle are relevant factors.[4]

■ How the car got to its present resting place is an additional, critical factor. The Washington Supreme Court, in *Smelter*, stated that:

> [the] focus should not be narrowly upon the mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move. Where, as here, circumstantial evidence permits a legitimate inference that the car was where it was and was performing as it was because of the defendant's choice, it follows that the defendant was in actual physical control.

*Id.* at 693. The defendant in *Smelter* was found sitting behind the wheel of his stopped car, which had run out of gas on the shoulder of the highway. We agree with the Washington court that some of the more persuasive indicia of actual physical control are how the car got to where it was found and whether the defendant drove it there.

*Garcia* suggests that "passive occupants" are, categorically, not in actual physical control of a vehicle in its statement that the intent of the implied consent statute is to "prevent drivers from entering their vehicles except as passengers or as passive occupants as in *Bugger.*" *Garcia*, 645 P.2d at 654. In

an explanatory footnote, the *Garcia* court further states that "nothing in the record warrants a finding that the plaintiff was physically unable to start the car, as would be the case with an unconscious or sleeping motorist." *Id.* n. 3. This dictum does not further define a "passive occupant." Further, because the driver was not asleep in *Garcia*, *Garcia* is factually inapposite to the present situation. Thus, we do not construe this language in *Garcia* as compelling a determination that a driver is not in actual physical control of his vehicle based upon only the fact that he is asleep.

*Fieselman v. State*, 537 So.2d at 603, is factually identical with the instant case. Fieselman was charged with being in actual physical control of a vehicle while under the influence of alcohol. He was found lying down, asleep, on the front seat of his car which was parked in a parking lot. The car's lights were on and the engine was not running. The Florida court determined that while these facts, alone, were insufficient to find that the defendant was in actual, physical control of the vehicle, the additional fact of the key found in the ignition was sufficient. *Id.* at 606. The court concluded, from the evidence, that:

> a reasonable inference can be drawn that Fieselman, while intoxicated, placed the keys in the ignition and thus was at least at that moment in actual physical control of the vehicle while intoxicated.

> We believe that such an inference can be drawn since a person who has placed keys in the ignition of a vehicle may be as much in actual physical control of the vehicle as a person seated behind the wheel of the vehicle. As the court recognized in *Griffin* [*v. State*, 457 So.2d 1070 (Fla.Dist.Ct.App.1984)], a legitimate inference to be drawn from the defendant's sitting position behind the wheel is that the defendant "could have at any time started the automobile and driven away"; this inference is no less legitimate when it is drawn from the presence of the keys in the ignition....

> ....

4. The supreme court, in *Lopez*, found that our statute pertaining to actual physical control "may not be construed to exclude those whose vehicles are presently immobile because of mechanical trouble." *Lopez*, 720 P.2d at 781.

Lastly, we point out that evidence that the key was in the ignition does not inexorably lead to the conclusion that the defendant was in actual physical control of the vehicle. It is merely a fact—along with the defendant's presence asleep and intoxicated in the vehicle—which, being capable of establishing the defendant's actual physical control of the vehicle, precludes the conclusion that *as a matter of law* the defendant was not in actual physical control of the vehicle

. . . .

*Id.* at 606–07.

■ In summary, we look to the totality of the circumstances to determine whether defendant was in actual physical control of his vehicle. Relevant factors for making this determination include, but are not limited to the following: (1) whether defendant was asleep or awake when discovered; (2) the position of the automobile; (3) whether the automobile's motor was running; (4) whether defendant was positioned in the driver's seat of the vehicle; (5) whether defendant was the vehicle's sole occupant; (6) whether defendant had possession of the ignition key; (7) defendant's apparent ability to start and move the vehicle; (8) how the car got to where it was found; and (9) whether defendant drove it there.

■ In the present case, the following facts are relevant: defendant, the vehicle's sole occupant, was asleep in a prone position on the seat with his head toward the passenger door. Although the vehicle's motor was not running, the keys were in the ignition and the headlights were on. Defendant had driven the vehicle to its position in the parking lot, from which it could easily be moved, and immediately returned to his truck upon learning that there were no vacancies at the motel.[5]

Whether defendant was asleep with his head on the steering wheel or stretched out on the seat, he would still be capable of driving off as soon as he awakened. Further, if he had prior control and was responsible for the car being in its present position, especially if the keys were still in the ignition and the headlights were on, he is ready to go, and the potential for tragedy is present. It is this circumstance that the legislature specifically wanted to prevent when it enacted laws prohibiting a driver from being in actual physical control of a vehicle while intoxicated. The legislative intent behind drunk driving laws is to protect the public by apprehending intoxicated drivers before they kill or maim someone. This professed public policy deserves more than mere lip service. To focus exclusively upon the fact that the driver was not sitting in the driver's seat or that he was asleep and to ignore other relevant factors, as defendant would have us do, is illogical. Thus, we conclude, under a totality of the circumstances, that defendant was in actual, physical control of the vehicle.

Defendant makes a compelling argument that intoxicated drivers should be encouraged to pull off to the side of the road to sleep it off.[6] This approach is more appropriately the province of the legislature. *See Fieselman,* 537 So.2d at 606. If the legislature deems it desirable to encourage drinking drivers to pull off the road and refrain from driving while intoxicated, it could delete the words "or be in physical control of" to accomplish that purpose.

We affirm defendant's conviction.

BENCH and LARSON, JJ., concur.

---

**5.** Defendant's counsel proffered:
> Mr. Walker, in his testimony, would state that he approached the motel. He met a guest at that hotel leaving say, "It's full, you cannot go in. It's occupied." So Mr. Walker at that time turned around and went to his truck, put the pillow on the bench of the truck seat, laid down and went to sleep.

**6.** In *State v. Peterson,* 769 P.2d 1221, 1224 (Mont.1989), the Montana Supreme Court rejected this argument, stating, "The better policy is that a person should ascertain his ability to drive *before* climbing behind the wheel and terrorizing the roadways of this state."