STATE of Utah, Plaintiff and Appellee,

v.

Kelly S. BARNHART, Defendant and Appellant.

No. 920357–CA.

Court of Appeals of Utah.

March 31, 1993.

Phillip L. Foremaster (argued), St. George, for defendant and appellant.

Eric A. Ludlow, Washington County Atty., and Wade A. Farraway (argued), Deputy Washington County Atty., St. George, for plaintiff and appellee.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

BENCH, Judge:

Defendant, Kelly Barnhart, appeals his conviction for being in actual physical control of a motor vehicle while under the influence of alcohol in violation of Utah Code Ann. § 41–6–44(1) (1988). We affirm.

## BACKGROUND

The parties do not dispute the basic facts. Defendant stipulated that the police report was accurate insofar as it concerned the period of time when the police were involved. The parties also stipulated to several additional facts. Finally, the trial court made additional factual findings of its own based upon the police report and the stipulated facts. We recite the facts accordingly.

On March 24, 1992, between 8:00 and 9:00 p.m., defendant drove his girlfriend's car to the grocery store in order to meet her. Defendant's intent was that his girl-

friend would drive the car home. Prior to driving to the store, defendant had consumed two cans of beer. While waiting in the car for his girlfriend, defendant consumed an additional *seven cans of beer.*

At approximately 10:00 p.m., the store manager called the police because the store had closed and defendant was still in the parking lot. When a police officer arrived, he found defendant sitting upright in the driver's seat with his head back. The keys were in the ignition but the car was not running and the engine was cold.

According to the officer, defendant was either sleeping or unconscious. The officer tapped on the window, but defendant did not respond. The officer then pounded on the door with his fist and defendant still did not respond. Finally, the officer opened the door and shook defendant until he awoke. He was *"very disoriented"* and the officer noticed a strong odor of alcohol on defendant's breath and in the car. When asked by the officer where the owner of the car was, defendant pointed to the empty passenger seat. Defendant could not tell the officer where she was.

The officer conducted field sobriety tests and determined that defendant was intoxicated. During the course of the officer's investigation, defendant's girlfriend arrived. Defendant was placed under arrest and taken to jail. Testing at the jail showed a blood-alcohol level of .18%.

The trial court found that defendant was unconscious and not merely asleep when the officer arrived, and that although defendant was the sole occupant of the car, he did not intend to drive the car away from the store. The trial court also found that when defendant drove to the store he was not under the influence of alcohol to a degree that would have rendered him in violation of the law at the time. Finally, the trial court made the following finding:

> I find specifically that you had possession of the ignition key, and it was in the ignition of the vehicle, and that you had the ability to start and move the vehicle, absent the fact that you appeared to be unconscious from the effects of the alcohol. But there was no other intervening factor other than the alcohol itself prohibiting you from starting and moving the car.

The trial court found defendant guilty of being in actual physical control of a vehicle while intoxicated. Defendant was then sentenced, but the sentence was stayed pending this appeal.

## STANDARD OF REVIEW

■ Defendant challenges the trial court's finding that he was in "actual physical control" of the vehicle, as proscribed by Utah Code Ann. § 41–6–44(1) (1988). Ultimate factual determinations such as this are limited by legal principles that guide a trial court in its factfinding function. *See State v. Thurman*, 846 P.2d 1256, 1268–1272 (Utah 1993). These legal guidelines create a field of inquiry within which the trial court can make its ultimate factual findings. *State v. Richardson*, 843 P.2d 517, 521–22 (Utah App.1992) (Bench, P.J., concurring). Whether or not a trial court operated within the proper field of inquiry is a determination we make using a correction-of-error standard of review. *See Thurman*, 846 P.2d at 1271–1272; *Richardson*, 843 P.2d at 522 (Bench, P.J., concurring).

As the supreme court reasoned in *Thurman*, multi-judge appellate courts are better suited to establish the legal guidelines trial courts must apply when making ultimate factual findings. 846 P.2d at 1271–1272. By utilizing a correction-of-error standard, appellate courts are able to ensure that trial courts statewide correctly identify and follow the same legal standards in making ultimate factual findings. This standard also allows appellate courts to uniformly adjust the field of inquiry within which trial courts must make their ultimate findings of fact. *See id.* ("each new opinion narrows the universe of unsettled questions"); *see also Richardson*, 843 P.2d at 524–25 (Bench, P.J., concurring) (if injustice occurs because of disparate treatment of similar facts by different trial courts, "the field of inquiry should be restricted by adjusting the governing law").

■ We do not, however, apply the correction-of-error standard to every aspect of a trial court's finding of ultimate fact. The correction-of-error standard is intended to allow us to review and correct the trial court's determination of "the legal content" of an ultimate finding. *Thurman,* 846 P.2d at 1271–1272. We defer, on the other hand, to the trial court's findings of underlying facts. *Id.* Consequently, we defer to a trial court's judgment of a debatable issue made within the trial court's proper realm of factual inquiry, such as a finding based on the totality of the circumstances. As the supreme court noted in *Thurman:* "the appellate court addresses itself to the clarity and correctness of the developing law." *Id.* (quoting *State v. Vigil,* 815 P.2d 1296, 1300 (Utah App.1991)).

If an appellant asserts that the trial court has incorrectly identified the legal guidelines establishing its permissible field of inquiry, we use the correction-of-error standard because the appellant has challenged the "legal content" of the trial court's finding. If, on the other hand, an appellant cannot show that the trial court's ultimate finding was erroneous as a matter of law, the appellant is requesting nothing more than a second opinion on a debatable question of fact. In such cases, an appellant is simply challenging the trial court's judgment in its ultimate factual finding. Absent a violation of legal guidelines, a trial court's finding of ultimate fact remains on the same level as any other underlying factual finding, and we defer. *See Lopez v. Schwendiman,* 720 P.2d 778, 780 (defer to trial court's finding of actual physical control unless trial court misapplied the law or the finding was clearly against the weight of the evidence); *Garcia v. Schwendiman,* 645 P.2d 651, 653 (Utah 1982) (same).

Our use of the correction-of-error standard when reviewing a trial court's compliance with the legal guidelines does not allow us to substitute our judgment for that of the trial court simply because we would have reached a different result. *State v. Howard,* 544 P.2d 466, 468 (Utah 1975); *Pitcher v. Lauritzen,* 18 Utah 2d 368, 371, 423 P.2d 491, 493 (1967); *Rich-* ardson, 843 P.2d at 524–25 (Bench, P.J., concurring); *Cf. Thurman,* 846 P.2d at 1271–1272. "The mere fact that on the same evidence the appellate court might have reached a different result does not justify it in setting the findings aside." *State v. Walker,* 743 P.2d 191, 193 (Utah 1987) (quoting Wright & Miller, *Federal Practice and Procedure* § 2585 (1971)).

■ If we could simply substitute our judgment in each new case, then each new opinion would not "narrow[ ] the universe of unsettled questions of appellate review." *Thurman,* 846 P.2d at 1271. Under the correction-of-error standard, particularly when the trial court has applied a totality of the circumstances test, an appellate court must identify the specific error made by the trial court before disturbing the trial court's finding. Only by clearly identifying the legal error of the trial court does the appellate court's ruling achieve the desired effect of harmonizing and developing the legal guidelines. *See id.; see also State v. Vigil,* 815 P.2d 1296, 1300 (Utah App.1991) (when reviewing ultimate findings, appellate courts address "the clarity and correctness of the developing law in order to provide unambiguous direction"). If the appellate court cannot clearly articulate a legal guideline that the trial court has violated in making its ultimate finding of fact, the trial court has not committed reversible error. The finding of an ultimate fact thereby remains a factfinding function of the trial court to which we defer. *Richardson,* 843 P.2d at 522 (Bench, P.J., concurring).

In the instant case, defendant raises several factors that he claims prevent a finding of actual physical control. In other words, he contends that as a matter of law the trial court could not have made the ultimate factual finding it made. His claims go directly to the legal guidelines that define the trial court's field of inquiry. In order for defendant to succeed, we must be persuaded to rule, as a matter of law, that the factors he points to prevented the trial court from properly finding that he had actual physical control. Otherwise, the trial court's finding that defendant was in

actual physical control remains factual in nature, and we defer.

## ANALYSIS

Defendant recites the fact situations of several "actual physical control" cases and attempts to draw factual similarities and distinctions that he believes are determinative in this case. We review those cases to discover the previously established legal guidelines in this area.

In *Garcia v. Schwendiman*, 645 P.2d 651 (Utah 1982), Garcia was in his vehicle attempting to start its motor, but apparently was unable to do so because of his intoxicated state. In front of Garcia's car was a fence and behind his car was another car— parked there by a concerned observer who had noticed Garcia's intoxicated condition. Garcia was unable to move the vehicle more than a few feet. The supreme court held that inasmuch as there was evidence that Garcia "occupied the driver's position behind the steering wheel, with possession of the ignition key and with the apparent ability to start and move the vehicle," there had been an adequate showing of actual physical control. *Id.* at 654. Noting that the objective of the statute is to prevent intoxicated persons from causing harm with a vehicle, the court rejected defendant's claim that his inability to move his car prevented him from having actual physical control. We gather the following legal guideline from the supreme court's holding: A person need not actually move, or attempt to move, a vehicle in order to have actual physical control; the person only needs to have "the apparent ability to start and move the vehicle." *Id.* at 654.

In *Lopez v. Schwendiman*, 720 P.2d 778 (Utah 1986), an officer found Lopez in his pickup truck parked by a public telephone booth at 3:00 a.m. The truck's motor was not running but there were vehicle tracks in the freshly fallen snow. Lopez was sitting in the driver's seat with his head resting on the steering wheel. When the door to the truck was opened, Lopez fell out of the truck and the officer had to catch him.

Lopez smelled of alcohol and was drooling. He needed assistance to stand. The keys were in the ignition. The supreme court affirmed the trial court's finding that Lopez was in actual physical control of the truck. The court reiterated that the statute is intended to protect the public safety by apprehending intoxicated persons before they strike. *Id.* at 781.

In *Richfield City v. Walker*, 790 P.2d 87 (Utah App.1990), Walker, seeking a room, drove to a motel during the early hours of the morning. He was already in an inebriated condition when the hotel informed him that there were no vacancies. He returned to the parking lot and went to sleep in his truck. He was discovered by a police officer who found the truck with the engine off but the headlights on. The keys were in the ignition. Walker was asleep on the seat, his head towards the passenger door and a blanket covering him. Walker submitted to an intoxilyzer test that registered his blood-alcohol level at .21%. This court indicated that whether a person was in actual physical control of a vehicle required consideration of the totality of the circumstances. *Id.* at 93.

*Walker* contains the following list of factors that may be relevant in considering the totality of the circumstances:

(1) whether defendant was asleep or awake when discovered;

(2) the position of the automobile;

(3) whether the automobile's motor was running;

(4) whether defendant was positioned in the driver's seat of the vehicle;

(5) whether defendant was the vehicle's sole occupant;

(6) whether defendant had possession of the ignition key;

(7) defendant's apparent ability to start and move the vehicle;

(8) how the car got to where it was found; and

(9) whether defendant drove it there.

*Id.* at 93.[1] The court made clear, however, that none of the factors are dispositive of

---

**1.** The trial court in the present case expressly   considered each of these factors. It made the

the question as a matter of law, nor is the list all-inclusive. *Id.*

The only case relied upon by defendant as being even arguably advantageous to his position is *State v. Bugger,* 25 Utah 2d 404, 483 P.2d 442 (1971). Bugger was found in his car, which was parked off the traveled portion of the highway. The motor was not running. Bugger was asleep at the time the officer arrived and the officer had some difficulty waking him. The Utah Supreme Court summarily held that "defendant at the time of his arrest was *not* controlling the vehicle, nor was he exercising any dominion over it." *Id.* 483 P.2d at 443. Although not clear from the decision, it appears that Bugger's conviction was reversed because he was asleep when first observed by the officer.[2] In *Lopez,* the supreme court distinguished *Bugger* by emphasizing that there was no evidence that Bugger was positioned in the driver's seat, as was Lopez. *Lopez,* 720 P.2d at 780. In *Walker,* this court indicated that under a totality of the circumstances test, whether a person was asleep when discovered and whether the person was positioned in the driver's seat are relevant factors, but they are not determinative of the question. 790 P.2d at 93. The *Bugger* decision, as subsequently interpreted, does not support defendant's contention that the trial court could not have found him to be in actual physical control simply because he was unconscious when the police officer arrived.

■ To summarize, we recognize the following established legal guidelines that affect a trial court's factfinding discretion

in these cases: the trial court must look to the totality of the circumstances, no single factor being dispositive as a matter of law, *Walker,* 790 P.2d at 93; the statute is intended to prevent intoxicated persons from causing harm by apprehending them before they operate a vehicle, *Garcia,* 645 P.2d at 654; *Lopez,* 720 P.2d at 781; a person need not actually move, or attempt to move, a vehicle, but only needs to have an apparent ability to start and move the vehicle in order to be in actual physical control, *Garcia,* 645 P.2d at 654–55.

The trial court made its findings within these previously established guidelines. Defendant, however, raises several additional factors which he asserts evidence a lack of actual physical control. He claims, in essence, that certain historical facts in this case mandate an ultimate finding that he was not in actual physical control. We must therefore determine whether the trial court violated any previously undeclared legal guidelines when, in light of the facts identified by defendant, it found that defendant was in actual physical control.

■ Defendant first claims that he left the keys in the ignition when he arrived at the parking lot—while he was not in an intoxicated condition. Defendant's argument totally fails on evidentiary grounds because it is not supported by the record. While the prosecution did stipulate that the keys were in the ignition when the officer arrived, there is no stipulation that defendant placed them there while sober. Even if such evidence were properly introduced, this fact would not preclude the trial court from finding that defendant was in actual

following findings: defendant was the sole occupant of the car and had possession of the ignition key, which was in the ignition; the car was located in the parking lot of a store with direct access to public streets; defendant was sitting upright in the driver's seat, albeit unconscious; the only impairment of defendant's ability to drive the car away was the debilitating effect of the alcohol. In defendant's favor, the trial court found: the car was not running when the police arrived, nor had it been running for some period of time; defendant had only consumed two beers prior to arriving at the store and therefore was likely not legally intoxicated at the time of arrival; defendant did not intend to drive the car away from the store when he

arrived. These factual findings have not been challenged.

**2.** The supreme court's decision in *Bugger* illustrates the problem of not clearly identifying the legal principles that drive the court's decision. We can only speculate as to why the supreme court reversed the trial court's finding in *Bugger.* Without an explanation of how the trial court erred as a matter of law, the *Bugger* decision is not particularly helpful to our analysis and does not serve as a guide to the trial courts and law enforcement and prosecutorial officials of this state. *See Thurman,* 846 P.2d at 1271–1272.

physical control. Since defendant still had the keys in his possession, it was permissible for the trial court to find that he had the apparent ability to start and move the car.

■ Defendant next argues that the police officer who found him did not see him touch any of the operating controls. While evidence that a person touched the controls in an attempt to operate the vehicle could be probative, the absence of such evidence does not, as a matter of law, prevent a finding that defendant was in actual physical control. Defendant's argument goes more to the question of whether defendant operated the vehicle, not whether he had actual physical control of the vehicle. Section 41–6–44(1) does not require that a person operate a vehicle in order to be in actual physical control. Having actual physical control over a vehicle while intoxicated is an offense distinct from operating a vehicle while intoxicated. *See Garcia,* 645 P.2d at 653 (statute proscribes conduct beyond and different from driving or operating a moving vehicle and therefore defines two distinct offenses).[3] Defendant's argument is therefore misplaced. Since there is a distinction between operating a vehicle and having actual physical control of a vehicle, a person need not operate, or attempt to operate, a vehicle before he or she may be found to be in actual physical control.

Defendant similarly claims that he could not have been in actual physical control of the vehicle while intoxicated because he was not intoxicated when he arrived at the store. Once again, this argument could have some merit if defendant had been charged with operating a vehicle while intoxicated, but he was only charged with being in actual physical control. The relevant inquiry is whether defendant was in actual physical control after he arrived at the store and consumed seven more beers. Trial courts may certainly consider a person's consumption and intoxication occur-

ring after the person has ceased operation of the vehicle but retained the apparent ability to operate the vehicle.

■ Defendant also points to the trial court's express finding that defendant intended that his girlfriend drive the car away. The subjective intent of a defendant not to operate the vehicle does not prevent a finding that the defendant was in actual physical control. "[A]n intent to control a vehicle [may] be inferred from the performance of those acts which we have held to constitute actual physical control." *Garcia,* 645 P.2d at 655. Whether or not a person has the subjective intent to subsequently operate a vehicle is irrelevant to the question of whether the person has the present ability to start and move the vehicle. It is therefore permissible for a trial court to find that a person had actual physical control over a vehicle even though the person did not subjectively intend to exercise it.

■ Finally, defendant claims that his unconscious condition at the time the officer arrived prevents a finding of actual physical control. Defendant's frame of reference, however, is too narrow. The fact that defendant was unconscious at the time the police officer arrived does not prevent a finding that defendant had the ability to start the car and drive away either before or after his unconsciousness. The trial court astutely observed in this case that the only thing that prevented defendant from starting the car and driving away was the incapacitating effect of the alcohol. It was therefore permissible to infer that defendant had actual physical control before the alcohol rendered him unconscious. If a person had actual physical control of a car while drinking himself into an unconscious stupor and would, upon waking, still be in control of the car, a trial court could logically disregard the fact the person was unconscious when the police arrived. We therefore expressly hold that

---

**3.** At issue in *Garcia* was Utah Code Ann. § 41–6–44(10) (1953 as amended), which was subsequently repealed and replaced with Utah Code Ann. § 41–6–44(1) (1988), the statute at issue here. Applying the *Garcia* analysis, this court

held in *Walker* that section 41–6–44(1) still describes two distinct offenses: (1) operating a vehicle, and (2) being in actual physical control of a vehicle. 790 P.2d at 89 n. 2.

the fact a person has passed out from imbibing alcohol does not, as a matter of law, prevent a trial court from finding that the person was in actual physical control of a vehicle.[4]

This ruling is consistent with the public policy goal of preventing an intoxicated person from causing harm with a vehicle. An unconscious person, with the ignition keys in possession may, at any time, awake and attempt to exercise his or her control by operating the vehicle. *See Garcia*, 645 P.2d at 653–54 (statute is intended to prevent the danger to the public created when a person gets behind the wheel and has the ability to start the vehicle and drive away) (citing *Hughes v. State*, 535 P.2d 1023 (Ok. Cr.1975) ("an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist.")). The risk to public safety intended to be prevented by the statute therefore continues, albeit in a reduced degree, while a person is unconscious.[5]

While defendant was free to make the foregoing arguments at trial in hopes of convincing the trial court that he did not have actual physical control given the totality of the circumstances, these facts do not mandate a finding by the trial court, as a matter of law, that he did not have actual physical control. Defendant therefore has not shown on appeal how the trial court departed from the proper field of inquiry. Consequently, defendant has not shown how the trial court committed reversible error. Inasmuch as defendant has not made any argument that the trial court's ultimate factual finding was against the clear weight of the evidence, we do not disturb the trial court's determination that defendant was in actual physical control of the vehicle while intoxicated.

## CONCLUSION

Defendant has failed to show how the trial court violated any legal guidelines in finding that he was in actual physical control of the car.

We therefore affirm the conviction.

JACKSON, J., concurs.

GARFF, J., concurs in result.

---

**4.** Were we to hold otherwise, police officers would be required to either wait until the intoxicated person awakes on his or her own volition, or wake the person and allow them to escape prosecution.

**5.** Similar analysis applies when considering defendant's subjective intent that his girlfriend would drive the car away. Even if defendant drove to the store with the original intention that he not drive away, defendant was capable, at any time, of altering his plans and driving the car himself.