US XPRESS, INC.; C.V. Sohn, Inc.; Southwest Motor Freight, Inc.; Umthun Trucking Company, Inc.; and Wisconsin Express Lines, Inc., Petitioners,

v.

UTAH STATE TAX COMMISSION, Respondent.

No. 940153–CA.

Court of Appeals of Utah.

Nov. 18, 1994.

Rehearing Denied Dec. 8, 1994.

Craig G. Adamson and Eric P. Lee, Salt Lake City, for petitioners.

Clark L. Snelson and Jan Graham, Salt Lake City, for respondent.

Before DAVIS, GREENWOOD and ORME, JJ.

## OPINION

ORME, Presiding Judge:

Petitioners, five interstate trucking companies, seek review of the Utah State Tax Commission's determination of their special fuel tax liability. We affirm.

## FACTS

The facts are not in dispute. Petitioners transport property and goods in their motor vehicles and, at times, operate within the state of Utah and utilize the state highway system. The vehicles consume diesel fuel, categorized as "special fuel" under the Motor and Special Fuel Tax Act's definition encompassing "any fuel regardless of name or character that ... is usable as fuel to operate or propel a motor vehicle upon the public highways of the state." Utah Code Ann. § 59–13–102(3)(d)(i) (Supp.1994).[1] Petitioners are required to pay a tax of nineteen cents per

gallon of special fuel consumed and to submit fuel use reports to the Utah State Tax Commission. *Id.* §§ 59–13–301(1)(a), –305(1). The Tax Commission has not generally differentiated between special fuel consumed while petitioners' trucks are in a "propulsion" mode, i.e., being driven, or while in a "non-propulsion" mode, i.e., stopped with their engines running.

Nonetheless, petitioners applied to the Operations Division of the Tax Commission for partial tax refunds of tax payments made for special fuel they calculated their trucks consumed while operating in a non-propulsion mode. The non-propulsion uses at issue entail situations in which vehicles are stopped and kept running in rest areas or similar locations, often without the driver present. The engines are kept idling to run heating or air-conditioning systems or cargo refrigeration units, or merely to keep the engine in optimum operating condition. Petitioners' calculations used data from a measuring system, installed in a random selection of fleet vehicles, which utilized a Hobbs meter[2] to record the time during which the fuel pump operated but the emergency or air brake was set.

After the Operations Division denied petitioners' refund requests, each petitioner filed a Petition for Redetermination by the Tax Commission. Since the trucking companies requested review of the same exemption issue, the five claims were consolidated for a common determination. The Tax Commission held a formal hearing on August 17, 1993, on petitioners' Motion for Partial Summary Judgment to determine liability for fuel tax during non-propulsion vehicle operations. On October 15, 1993, the Tax Commission denied petitioners' Motion for Partial Summary Judgment, and, upon determining there were no further issues for consideration, issued its Final Decision and Order. The Tax Commission determined that special fuel consumed during non-propulsion opera-

---

1. The citations to the Motor and Special Fuel Tax Act in this opinion are to the current version of the Utah Code Annotated. Although the Legislature made some changes to the pertinent sections, effective July 1994 and thus after the Tax Commission hearing in issue, the modifications made no relevant substantive changes to the statutes dealt with in this opinion.

2. A Hobbs meter is commonly used in aircraft to track engine operation and correlative maintenance requirements.

tion of motor vehicles is not exempt from the special fuel tax and affirmed the Operation Division's refusal to grant the requested tax refunds. Petitioners now seek review of the Tax Commission's decision.

## ISSUES

In support of their position that special fuel used in non-propulsion motor vehicle operations should be exempt from the special fuel tax, petitioners raise the following arguments: (1) the Tax Commission erred in interpreting the provisions of the Motor and Special Fuel Tax Act that define special fuel and that define the uses which are subject to taxation; (2) provisions of the International Fuel Tax Agreement support tax exemption for non-propulsion fuel use, and should prevail over conflicting rules promulgated by the Tax Commission; and (3) the Tax Commission's interpretation of the pivotal statute and related administrative rule violates Article I, § 24, of the Utah Constitution by treating similar classifications of taxpayers unequally.

## STANDARD OF REVIEW

The applicable standard of review for formal proceedings conducted by the Tax Commission is codified, in part, as follows:

> When reviewing formal adjudicative proceedings commenced before the commission, the Court of Appeals or Supreme Court shall:
>
> (a) grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and
>
> (b) grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court.

Utah Code Ann. § 59–1–610(1) (Supp.1994). *See Harper Invs., Inc. v. State Tax Comm'n,* 868 P.2d 813, 815 (Utah 1994); *Matrix Funding Corp. v. State Tax Comm'n,* 868 P.2d 832, 833 (Utah App.1994). In the instant case, petitioners challenge only the legal conclusions of the Tax Commission, and those challenges primarily concern statutory interpretation, a matter over which the Tax Commission has not been granted discretion. Thus, we examine the Tax Commission's legal conclusions for correctness.

## STATUTORY INTERPRETATION

By statutory definition, special fuel is "any fuel regardless of name or character ... usable as fuel to *operate or propel* a motor vehicle upon the public highways of the state." Utah Code Ann. § 59–13–102(3)(d)(i) (Supp.1994) (emphasis added). Special fuel is exempt from tax if it

> is sold or used for any purpose other than *to operate or propel* a motor vehicle *upon the public highways* of the state, but this exemption applies only in those cases where the purchasers or the users of special fuel *establish to the satisfaction of the commission* that the special fuel was used for *purposes other than to operate* a motor vehicle upon the public highways of the state....

*Id.* § 59–13–301(2)(a) (emphasis added). Thus, the term "operate or propel" is used both to describe special fuel and to define the circumstances under which its use is exempt from taxation.

■ Several well-established rules of statutory interpretation are pertinent to our analysis. First, we construe statutes that grant exclusions from taxation strictly against the party seeking an exemption, and that party accordingly bears the burden of proving that it qualifies for the exemption sought. *See Nucor Corp. v. State Tax Comm'n,* 832 P.2d 1294, 1297 (Utah 1992); *Broadcast Int'l, Inc. v. State Tax Comm'n,* 882 P.2d 691 (Utah App.1994). Second, in construing any statute, " 'we first examine the statute's plain language and resort to other methods of statutory interpretation only if the language is ambiguous.' " *Stucker v. Summit County,* 870 P.2d 283, 287 (Utah App.) (quoting *State v. Masciantonio,* 850 P.2d 492, 493 (Utah App.1993)), *cert. denied,* 879 P.2d 266 (Utah 1994). *Accord Hercules,*

*Inc. v. State Tax Comm'n*, 877 P.2d 133, 136 (Utah 1994), *cert. den.*, —— U.S. ——, 115 S.Ct. 636, 130 L.Ed.2d 543 (1994). Accordingly, we read the words of a statute literally unless such a reading is unreasonably confused or inoperable, *Amax Magnesium Corp. v. State Tax Comm'n*, 796 P.2d 1256, 1258 (Utah 1990), and give the words their usual and accepted meaning. *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045 (Utah 1991). Third, the reviewing court does not look beyond plain and unambiguous language to ascertain legislative intent. *Retherford v. AT & T Communications, Inc.*, 844 P.2d 949, 961 (Utah 1992); *Hatton–Ward v. Salt Lake City Corp.*, 828 P.2d 1071, 1072 (Utah App.), *cert. denied*, 843 P.2d 1042 (Utah 1992). Finally, we presume that the "statute is valid and that the words and phrases used were chosen carefully and advisedly." *Amax*, 796 P.2d at 1258.

Applying these rules in the instant case, we reject petitioners' contentions that "operate" is fully synonymous with "propel," and that the Legislature, which supposedly was concerned only about wear and tear on the highways caused by trucks in motion, meant only to tax fuel that is used in propelling vehicles. This interpretation is at variance with a plain reading of the statute and would render the word "operate"—used numerous times in the pertinent statutory provisions—completely meaningless. A plain reading of the phrase "operate or propel," as used in this statutory scheme, indicates two distinct, albeit related, terms separated by the disjunctive "or."

Such a construction is comparable to that before the court in *Garcia v. Schwendiman*, 645 P.2d 651 (Utah 1982). In *Garcia*, the Utah Supreme Court had to determine whether the statutory term "driving" was synonymous with the phrase "actual physical control of a vehicle." *Id.* at 653–54. The Court held that "actual physical control" includes "driving," but also includes conduct beyond mere "driving." *Id.*

Similarly, in the instant case, "propel" is merely one aspect of the broader concept "operate."[3] The word "operate," then, as used in the context of motor vehicle use, is a more comprehensive term than the word "propel," which represents only one facet of the operation or function of a vehicle. *See id.* Thus, "operate" is the linchpin term, and "propel" is the less critical one.[4] Petitioners' statutory construction theory is unavailing because it makes "propel" the key term, with "operate" reduced to a superfluous synonym.

■ Therefore, petitioners' motor vehicles are operating when fuel is used to run heating and air conditioning systems and to maintain engines for maintenance reasons, even though the vehicles are in a stationary, non-propulsion mode. These vehicles engage in a different operational function, but are nonetheless in a state of operation, i.e., propulsion, when the drivers release the brakes and apply power to propel the vehicles down the highway. We see no ambiguity in section 59–13–102(3)(d), which defines special fuel through its capacity to operate vehicles, *including* its capacity to propel. Nor do we see any confusion in section 59–13–301(2)(a), which clearly grants tax exempt status only for any use *other than* those uses involving operation *or* propulsion of a vehicle on a highway.

■ Accordingly, we agree with the Tax Commission's analysis of the phrase "operate

---

3. There are two definitions of "operate" relevant to vehicle use, but the term "function" is at the heart of both meanings: "to function through the use of a specified agent (the tractor operates on diesel oil); ... to cause to function, usu[ally] by direct personal effort." *Webster's Third New International Dictionary* 1580–81 (1986). In contrast, propel is defined as "to impel forward or onward." *Id.* at 1817.

4. Indeed, the Legislature could have left "propel" out of the statutes without changing the

plain meaning of the phrase "operate or propel." It even did so in one provision. *See* Utah Code Ann. § 59–13–301(2)(a) (Supp.1994) (stating that to secure tax exemption fuel users must "establish ... that the special fuel was used for purposes other than *to operate* a motor vehicle upon the public highways") (emphasis added). By contrast, reading "operate" out of the statutes by treating it as a mere synonym of "propel" would materially limit what is otherwise the scope of the taxing scheme in question.

or propel" as constituting two related motor vehicle functions, either of which will subject the user to special fuel tax. Non-propulsion functions, by themselves, are simply not exempt from taxation.[5]

## APPLICABILITY OF INTERNATIONAL FUEL TAX AGREEMENT

· ■ Both parties agree that Utah is a party to the International Fuel Tax Agreement (IFTA). Petitioners contend that IFTA provisions support tax-exempt status for non-propulsion special fuel use and must, as provided by statute, prevail over a conflicting Tax Commission rule [6] that fails to grant an exemption for non-propulsion fuel use. Petitioners rely on Utah Code Ann. § 59–13–501(7) (1992), which states that "[i]f the commission enters into any agreement under the authority of this section, and the provisions established in the agreement are in conflict with any rules promulgated by the commission, the agreement provisions pre-

vail." However, even if such a conflict exists, this argument is unavailing because our decision is squarely premised on a plain reading of the statute and to no extent turns on any administrative rule. Section 59–13–501(7) says nothing about IFTA prevailing over conflicts with actual statutes. Thus, IFTA has no bearing on our decision.

## VIOLATION OF UTAH CONSTITUTION

■ We do not reach petitioners' arguments under Article I, § 24, of the Utah Constitution because these issues were not raised in the administrative proceedings under review.[7] *Ashcroft v. Industrial Comm'n,* 855 P.2d 267, 268 (Utah App.), *cert. denied,* 868 P.2d 95 (Utah 1993). It is well settled that, absent extraordinary circumstances or plain error, issues cannot be raised for the first time on appeal. *See State v. Brown,* 853 P.2d 851, 853–54 (Utah 1992). *Accord State v. Archambeau,* 820 P.2d 920, 925–26 (Utah App.1991).

---

5. It is far from clear that even if petitioners' effort to equate "operate" with "propel" were successful, they would be entitled to relief. Petitioners have essentially ignored the exemption statute's core requirement that operation, including propulsion, be *"other than* ... upon the public highways of the state."  Utah Code Ann. § 59–13–301(2)(a) (Supp.1994) (emphasis added). The Hobbs meter data fails to establish this core requirement because it tracks *what* the vehicle is doing, but it does not track *where* it is at that time. Thus, the Hobbs meter treats as identical an idling truck parked overnight at a privately-owned truck stop and an idling truck parked in the emergency lane of a public highway.

6. Petitioners assert that IFTA conflicts with the following administrative rule:

   D.  *No excise tax is imposed upon special fuel which is sold or used for any purpose other than to operate or propel a motor vehicle upon the public highways of the state.*  Refer to Utah Code Ann. Section 59–13–301(2)(a)....  For special fuel users this means that the special fuel tax exemption is allowed for the following three types of special fuel use:
   1. Use other than in motor vehicles.
   2. Use in vehicles off-highway....
   3. Use in motor vehicles with power take-off units.  Where a power take-off unit is driven by the main engine of the vehicle and used

to operate auxiliary equipment a quantity, as enumerated below ... shall be deemed to be for non-highway use and exempt from the special fuel tax.  The type of units and non-highway allowances are as follows:
   a) concrete mixer trucks—20 percent,
   b) garbage trucks with trash compactor—five percent,
   c) vehicles with powered pumps, conveyors or other unloading devices may be individually negotiated but shall not exceed
   (1) ¾ gallon per 1000 gallons pumped; or
   (2) ¾ gallon per 6000 pounds of commodities unloaded such as coal, grain, potatoes, etc.
   ....
   5. Special fuel used on-highway for purposes of idling a vehicle is not exempt from the special fuel tax since the fuel is used in the operation of a motor vehicle.
   Utah Admin. Code R865–4–2D(D) (1994).

7. While we agree with petitioners that the phrases "equal protection" or "uniform operation of law" need not have been talismanically intoned before the Tax Commission, the portions of the hearing transcript cited by petitioners fail to suggest that such concepts were in any way "raised to a level of consciousness such that the [Tax Commission could] consider it."  *State v. Brown,* 856 P.2d 358, 361 (Utah App.1993) (quoting *James v. Preston,* 746 P.2d 799, 802 (Utah App. 1987)).

## CONCLUSION

The Tax Commission correctly concluded that petitioners are liable for special fuel tax for fuel consumed by their vehicles while operating in a non-propulsion mode on Utah highways. There was no error in the Tax Commission's interpretation of Utah Code Ann. § 59–13–301(2)(a) (Supp.1994). Accordingly, we affirm the Tax Commission's Final Decision and Order.[8]

DAVIS and GREENWOOD, JJ., concur.

---

**8.** Petitioners are not without recourse in their quest to achieve a partial tax exemption. The Administrative Rule Making Act allows interested parties to petition for amendment of administrative rules pursuant to the appropriate division's prescribed procedures. Utah Code Ann. § 63–46a–12 (1993). Parties who are substantially and directly affected by a rule may submit written petitions to the Tax Commission to add to, amend, or repeal a particular rule. Utah Admin. Code R861–1–2(G), (H) (1994). Petitioners may seek, pursuant to these provisions, an amendment similar to the allowances for power take-off units in R865–4–2D(D)(3), *see* note 6, which we are told came about as a result of negotiation between the Tax Commission and affected companies.