Josephine ARTAC, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF HEALTH AND FAMILY
SERVICES, Respondent-Respondent.†

Court of Appeals

*No. 99–1523. Submitted on briefs December 6, 1999.—Decided
March 30, 2000.*

**2000 WI App 88**

(Also reported in 610 N.W.2d 115.)

†Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Mitchell Hagopian* of *Elder Law Center of the Coalition of Wisconsin Aging Groups* of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

481

general, and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1.   DYKMAN, P.J. Josephine Artac appeals from a circuit court order affirming the determination of a hearing examiner in the Division of Hearings and Appeals (DHA) that Artac was ineligible for Medical Assistance (MA) benefits because she had divested assets when property she placed in trust was distributed to the beneficiary. We conclude that Artac did not divest assets because the trustee did not act on Artac's behalf when she distributed the trust property. Accordingly, we reverse.

## I.  Background

¶ 2.   On May 23, 1992, Artac deeded her home and property to an irrevocable trust and named Freida Adams as trustee. Patricia Sixel, Artac's daughter, was the beneficiary of the trust. The trust provided, in part:

> 2.   Reserved Rights.
> (a)   Subject to subparagraphs 2(c)–(e) below, the Grantor expressly reserves and retains the right to live on and use the real property described above during the Grantor's lifetime. During such time, Grantor shall be responsible for all real estate taxes and assessments against said property, and for all costs of insurance, maintenance and upkeep of the same.
> . . . .
> (d)   During any period the Grantor is declared incompetent by her treating physician, the Trustee shall manage the property described above pursuant to the Trustee's powers below. The Trustee shall have the right to request payment of expenses

which are the responsibility of the Grantor under subparagraph 2(a) above from the Grantor's attorney-in-fact. If the Grantor does not have sufficient funds to cover such expenses and there are no assets in this trust other than the property described above, the Trustee may, in the Trustee's discretion, terminate this trust and distribute its assets pursuant to the terms of this trust.

(e) If the period of incompetence referred to in subparagraph 2(d) above is determined to be permanent by the written statement of two physicians, including the Grantor's treating physician, the Trustee may, in the Trustee's discretion, terminate this trust and distribute its assets pursuant to the terms of this trust.

¶ 3. On December 10 and 11, 1997, two doctors found Artac to be incompetent. On January 9, 1998, Adams deeded the trust property to Sixel. On January 13, 1998, Sixel applied to the Clark County Department of Social Services for MA benefits for her mother.[1] The county denied the application because it concluded that Artac had divested assets when Adams transferred the trust property to Sixel. Artac requested a fair hearing before the DHA regarding the denial of her application.[2]

---

[1] Under WIS. STAT. § 49.45(2)(a)3 (1997–98), the Department of Health and Family Services may delegate determinations of MA eligibility to county departments.

[2] WISCONSIN STAT. § 49.45(5)(a) (1997–98) provides that any person whose MA application is denied can petition the Department of Health and Family Services for a fair hearing. Under WIS. STAT. § 227.43(1)(bu) (1997–98), the administrator of the Division of Hearings and Appeals shall "[a]ssign a hearing examiner to preside over any hearing of a contested case that is required to be conducted by the department of health and fam-

¶ 4.   The DHA hearing examiner concluded that Artac was "ineligible for medical assistance because a person acting on her behalf divested the equivalent of a life interest in property that she was entitled to receive." The hearing examiner explained that an applicant cannot divest assets in order to become eligible for MA benefits. He acknowledged that the trust itself was not subject to the divestment rules because it was created before the "look-back period" for Artac's MA application. However, he concluded that the right Artac had reserved under the trust to live on the property met the divestment statute's definition of an asset because it was a resource that Artac "was entitled to but did not receive because of action of a person with legal authority to act on her behalf." The hearing examiner determined that because Artac lost her remaining interest in the trust property when Adams transferred the property to Sixel in January 1998, Artac had divested an asset within the applicable look-back period. DHA denied Artac's request for a rehearing and the circuit court affirmed the hearing examiner's decision. Artac appeals.

## II.  Analysis

¶ 5.   WISCONSIN STAT. § 49.453 (1997–98)[3] prohibits a person from divesting assets so as to become eligible for MA benefits. Section 49.453 provides, in pertinent part:

> (1)  DEFINITIONS. In this section and in s. 49.454:

---

ily services and that is not conducted by the secretary of health and family services."

[3] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

(a) "Assets" has the meaning given in 42 USC 1396p(e)(1).

. . . .

(2) INELIGIBILITY FOR MEDICAL ASSISTANCE FOR CERTAIN SERVICES. (a) *Institutionalized individuals.* Except as provided in sub. (8), if an institutionalized individual or his or her spouse, or another person acting on behalf of the institutionalized individual or his or her spouse, transfers assets for less than fair market value on or after the institutionalized individual's look-back date, the institutionalized individual is ineligible for medical assistance for the following services for the period specified under sub. (3):

1. For nursing facility services.

2. For a level of care in a medical institution equivalent to that of a nursing facility.

3. For services under a waiver under 42 USC 1396n.

42 U.S.C. § 1396p(e)(1) (1994) provides:

The term "assets," with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action–

(A) by the individual or such individual's spouse,

(B) by a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or such individual's spouse, or

(C) by any person, including any court or administrative body, acting at the direction or upon the request of the individual or such individual's spouse.

¶ 6. An individual must transfer an asset for less than fair market value on or after the "look-back date" for it to be considered a divestment. *See* WIS. STAT. § 49.453(2)(a). Section 49.453(1)(f) provides that the look-back date applied to divestments is thirty-six months before, or, for trusts, sixty months before, the first date on which a person is both institutionalized and has applied for MA. The look-back dates established in § 49.453(1)(f) were made effective retroactive to October 1, 1993. *See* 1993 Wis. Act 437 § 9426. In order to ensure that § 49.453 is not applied to divestments made before the statute became effective, Department of Health and Family Services (DHFS) has phased in the look-back period for trusts in its MA Handbook so that they do not extend beyond October 1, 1993. The MA Handbook provides that, for MA applications made in January 1998, the look-back period for trusts is fifty-two months.

¶ 7. Artac argues that the hearing examiner incorrectly concluded that she divested an asset on January 9, 1998, when Adams deeded the trust property to Sixel. Artac contends that she relinquished her entire interest in the property when she created the trust in May 1992, well before the applicable look-back date. Since Artac had no interest in the trust property when it was transferred to Sixel in January 1998, she did not divest herself of any assets at that time. Artac also asserts that, even if she did give up an interest in the trust property when Adams transferred it to Sixel, that did not amount to a divestment of an asset because Adams did not have legal authority to act on her behalf as required by 42 U.S.C. § 1396p(e)(1)(B) (1994).

¶ 8. The DHFS concedes that Artac's placement of her home and property in trust in May 1992 did not affect her January 1998 MA application because it

occurred before the look-back date. However, DHFS contends that, by reserving the right to live on the property during her lifetime, Artac retained a life interest in the property under the trust. It argues that Artac's life interest was terminated in January 1998 when Adams transferred the trust property to Sixel. Thus, DHFS argues that Artac divested an asset within the applicable look-back period.

■■■

¶ 9.   In an appeal of an administrative agency decision, we review the decision of the agency, not that of the circuit court. *See Lilly v. DHSS*, 198 Wis. 2d 729, 734, 543 N.W.2d 548 (Ct. App. 1995). The interpretation and application of WIS. STAT. § 49.453 and 42 U.S.C. § 1396p(e)(1) (1994) to undisputed facts are questions of law that we review de novo. *See Tannler v. DHSS*, 211 Wis. 2d 179, 183, 564 N.W.2d 735 (1997). However, while we are not bound by agency conclusions of law, *see id.*, we generally give agency statutory interpretations one of three levels of deference: "great weight," "due weight" or no deference, *see Zignego Co. v. DOR*, 211 Wis. 2d 819, 823–24, 565 N.W.2d 590 (Ct. App. 1997).

¶ 10.   In order to give an agency statutory interpretation great weight deference, we must conclude that:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its specialized knowledge or expertise in forming the interpretation; and (4) the agency's interpretation will provide consistency and uniformity in the application of the statute.

*Tannler*, 211 Wis. 2d at 184. Due weight deference is appropriate "if the agency decision is 'very nearly' one of first impression." *Id.* Finally, we review the agency's decision de novo "if the case is one of first impression for the agency and the agency lacks any special expertise." *Id.*

¶ 11.   In determining the appropriate level of deference in this case, we must address whether we are reviewing a DHA decision or a DHFS decision. Although Artac petitioned DHFS for a fair hearing regarding the denial of her MA application, the fair hearing was conducted by a DHA hearing examiner, who made the final decision. In *Roehl Transp., Inc. v. Wisconsin Div. of Hearings and Appeals*, 213 Wis. 2d 452, 455, 570 N.W.2d 864 (Ct. App. 1997), Roehl challenged the Department of Transportation's (DOT) imposition and collection of state taxes on truck fuel use. The parties agreed to have the challenge heard by a DHA hearing examiner, who found in favor of the DOT. *See id.* at 455, 457. On appeal, we explained that we were reviewing the decision of a DHA hearing examiner, not a decision of the DOT. *See id.* at 460. We granted no deference to the DHA decision because DHA was not "a 'line' agency charged with the administration and enforcement of the statutes involved," but was instead a division of the Department of Administration, "a department created to provide management services and assistance to state agencies and departments." *Id.* DHA did not have the same experience or expertise as the DOT in the area of fuel taxation and was not entitled to the same level of deference. *See id.* at 460–61.

¶ 12.   In *Sea View Estates Beach Club, Inc. v. DNR*, 223 Wis. 2d 138, 144, 588 N.W.2d 667 (Ct. App. 1998), *review denied*, 225 Wis. 2d 489, 594 N.W.2d 383

(Wis. Apr. 6, 1999) (No. 97–3418), Sea View applied to the Department of Natural Resources (DNR) for a pier permit. Several third parties objected and, after a contested hearing, a DHA hearing examiner concluded that the DNR should issue a permit for a smaller pier than Sea View requested. *See id.* at 144–45. By not seeking judicial review, the DNR adopted the hearing examiner's decision as its own pursuant to WIS. STAT. § 227.46(3)(a)[4] and WIS. ADMIN. CODE § NR 2.155(1).[5] *See Sea View*, 223 Wis. 2d at 146–47. We decided that *Roehl* could be distinguished, because unlike the DOT in *Roehl*, the DNR expressly adopted the DHA hearing examiner's decision by virtue of its administrative rule. *See id.* We granted great weight deference because the DNR had expertise in regulating piers and had been charged by the legislature with the duty of enforcing the laws regulating piers in navigable waters. *See id.* at 149.

¶ 13. In this case, we conclude that we are reviewing a decision by a DHA hearing examiner and not a DHFS decision. As in *Roehl*, we grant no deference to the DHA decision. In *Keip v. DHFS*, 232 Wis. 2d 380, 384, 606 N.W.2d 543 (Ct. App. 1999), we also

---

[4] WISCONSIN STAT. § 227.46(3) provides, in part:

With respect to contested cases except a hearing or review assigned to a hearing examiner under s. 227.43(1)(bg), an agency may by rule or in a particular case may by order:

(a) Direct that the hearing examiner's decision be the final decision of the agency.

[5] WISCONSIN ADMIN. CODE § NR 2.155(1) provides, in part: "Unless the department petitions for judicial review as provided in s. 227.46(8), Stats., the decision shall be the final decision of the department, but may be reviewed in the manner described in s. NR 2.20."

reviewed a denial of MA benefits that was challenged in a fair hearing before a DHA hearing examiner. In *Keip*, the hearing examiner issued a proposed decision, but the DHFS rejected the hearing examiner's reasoning and issued its own final decision. *Id.* at 384–86. We applied our deference analysis to the DHFS decision and not to the hearing examiner's decision. *See id.* at 390–92. However, in this case, DHFS made no response to the hearing examiner's decision. It did not adopt the hearing examiner's decision by order or by rule, as the DNR did in *Sea View*, and as contemplated by WIS. STAT. § 227.46(3)(a). As we explained in *Roehl*, 213 Wis. 2d at 460, the DHA is not a "line" agency with expertise in administering the applicable statutes. DHA does not have experience administering the MA program, and the issue presented appears to be one of first impression for DHA. Thus, the hearing examiner's determination is entitled to no deference.[6]

---

[6] We acknowledge that our decision to follow *Roehl Transp., Inc. v. Wisconsin Div. of Hearings and Appeals*, 213 Wis. 2d 452, 570 N.W.2d 864 (Ct. App. 1997) and grant no deference to the DHA decision turns on the fact that DHFS has not promulgated a rule by which it adopts a DHA decision as its own unless it petitions for judicial review. In *Roehl* and *Sea View Estates Beach Club, Inc. v. DNR*, the DOT and the DNR made no specific statement adopting the DHA hearing examiner's decision. *Roehl*, 213 Wis. 2d at 455, 457–58; *Sea View Estates Beach Club, Inc. v. DNR*, 223 Wis. 2d 138, 147, 588 N.W.2d 667 (Ct. App. 1998), *review denied*, 225 Wis. 2d 489, 594 N.W.2d 383. In *Roehl*, 213 Wis. 2d at 460–61, we granted no deference because we considered the decision to have been made by DHA. In *Sea View*, 223 Wis. 2d at 147–49, we applied great weight deference because we considered the decision to have been made by DNR by virtue of its administrative rule. In both cases, the DHA was the last agency to make a reasoned decision. It appears unusual to grant different levels of deference to what are effectively all

¶ 14. We conclude that the hearing examiner erred in determining that Artac divested an asset within the applicable look-back period. As DHFS acknowledges, Artac's placement of her home and property in the trust was not a divestment prohibited by WIS. STAT. § 49.453, because it occurred over fifty-two months before she applied for MA benefits. The only question remaining is whether Artac divested an asset by losing her reserved right to live on the property when Adams transferred the trust property to Sixel in January 1998. We agree with Artac that she did not.

¶ 15. Artac did not divest an asset because Adams did not act on Artac's behalf when she distributed the trust property. WISCONSIN STAT. § 49.453 defines "asset" by reference to 42 U.S.C. § 1396p(e)(1). Under 42 U.S.C. § 1396p(e)(1)(B) (1994), an "asset" includes any income or resources that an individual is entitled to but does not receive because of action "by a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or such individual's spouse."[7] When the doctors found Artac to be incompetent, Adams, acting as trustee, distributed the trust property to Sixel, the trust beneficiary. A trust generally "has three ele-

DHA decisions based on whether a particular agency has a rule by which it automatically adopts those decisions. However, under *Roehl* and *Sea View*, it appears that we are bound to do so.

[7] DHFS does not contend that Artac herself, or Artac's spouse, took any action to distribute the trust property as contemplated under 42 U.S.C. § 1396p(e)(1)(A) (1994). We address below DHFS's contention that Adams or Sixel took action "at the direction or upon the request of" Artac as provided for in 42 U.S.C. § 1396p(e)(1)(C) (1994).

ments: a trustee, a beneficiary and trust property." *McMahon v. Standard Bank & Trust Co.*, 202 Wis. 2d 564, 568, 550 N.W.2d 727 (Ct. App. 1996). The trustee acts on behalf of the beneficiary. *See id.* Thus, Adams acted on Sixel's, not Artac's, behalf when she distributed the trust property and Artac did not divest an "asset" as defined in the statutes.

¶ 16.   DHFS argues that we should not conclude that Adams acted as trustee when she distributed the trust property. DHFS contends that it would be equally reasonable to conclude that Adams acted as Artac's "informal guardian" in distributing the property, and thus acted "at the direction or upon the request of" Artac as contemplated by 42 U.S.C. § 1396p(e)(1)(C) (1994). DHFS suggests it would also be reasonable to conclude that Sixel exercised her power of attorney to terminate Artac's interest in the property and thus was either a "person . . . with legal authority to act" on Artac's behalf or a person "acting at the direction or upon the request of" Artac under 42 U.S.C. § 1396p(e)(1)(B) or (C) (1994). We disagree. While these suggestions are possible, neither is supported by the record. On the other hand, the record contains a "Trustee's Deed," by which Adams, "as Trustee of the Josephine H. Artac Trust," conveyed the trust property to Sixel. When she distributed the trust property, Adams acted as trustee and did not act on Artac's behalf or at her direction or request.

¶ 17.   Finally, DHFS argues that Artac's loss of her right to live on the property in January 1998 was a divestment under Wis. Stat. § 49.453(7).[8] We disagree.

---

[8] Wisconsin Stat. § 49.453(7) provides:

Certain Authorizations. For the purposes of sub. (2), if a covered individual or his or her spouse authorizes another person to transfer, encumber, lease, consume or otherwise act with respect to

Section 49.453(7) applies only "if a covered individual or his or her spouse authorizes another person to transfer, encumber, lease, consume or otherwise act with respect to an asset as though the asset belonged to that other person." When Artac set up the trust, she named Adams as trustee. From that point on, Adams acted as trustee with regard to the trust property. When she distributed the trust property in January 1998, she acted according to the terms of the trust and on behalf of the beneficiary. She did not act with Artac's "authorization."

¶ 18. We need not address whether Artac retained the equivalent of a life interest in the trust property by reserving the right to live on the property, as DHFS contends and as the hearing examiner concluded. Whether or not Artac retained a life interest in the trust property, she did not divest an "asset" under WIS. STAT. § 49.453 and 42 U.S.C. § 1396p(e)(1) (1994) when Adams distributed the trust property because Adams did not act on Artac's behalf. Accordingly, we reverse the circuit court's order affirming the hearing examiner's decision.

*By the Court.*—Order reversed.

---

an asset as though the asset belonged to that other person; if that other person exercises the authority in a way that causes the asset to be unavailable for the support and maintenance of the covered individual or his or her spouse; and if the covered individual does not receive fair market value for the asset, then the covered individual or his or her spouse transfers assets for less than fair market value at the time that the other person exercises the authority.